TRI–STAR PICTURES, INC., Plaintiff,

v.

Kurt UNGER; Leisure Time Productions, B.V.; Academy Pictures A.G.; and David N. Bottoms and Raya S. Dreben, as Executors of the Estate of Samuel Spiegel, Defendants.

LEISURE TIME PRODUCTIONS, B.V., Third–Party Plaintiff,

v.

COLUMBIA PICTURES INDUSTRIES, INC.; Columbia Pictures Entertainment, Inc.; and Horizon Pictures, G.B, Third–Party Defendants.

No. 88 Civ. 9129(DNE).

United States District Court, S.D. New York.

March 6, 1997.

Rivkin, Radler & Kremer, Uniondale, NY (James J. Jennings, of counsel), for Third–Party Plaintiff.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Ira S. Sacks and Matthew M. Weissman, of counsel), for Third–Party Defendants.

## Opinion & Order

EDELSTEIN, District Judge:

Presently before this Court is a motion to compel discovery brought by third-party plaintiff Leisure Time Productions, B.V. ("third-party plaintiff" or "Leisure Time") against third-party defendant Columbia Pictures Industries, Inc. and its successor, Sony Pictures Entertainment, Inc. ("third-party defendant" or "Columbia"). For the following reasons, Leisure Time's motion is granted in part and denied in part.

## BACKGROUND

This Court previously issued two lengthy opinions arising from the instant litigation, see *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.*, 749 F.Supp. 1243 (S.D.N.Y.1990) (the "1990 Opinion"), *aff'd*, 17 F.3d 38 (2d Cir.), *cert. denied*, 513 U.S. 987, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994); *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.*, No. 88 Civ. 9127, 1992 WL 296314 (S.D.N.Y. Oct.6, 1992), each of which contains an extensive factual and procedural review of this case. Nevertheless, this Court will provide a brief history of the events underlying the instant motion.

The instant litigation concerns Leisure Time's ability to release in the United States a motion picture entitled "Return from the River Kwai" ("*Return*"). Pursuant to a 1986 distribution agreement (the "distribution agreement") with Leisure Time, Tri–Star Pictures, Inc. ("Tri–Star") obtained exclusive distribution rights to *Return*. *Tri–Star*, 749 F.Supp. at 1245–46. Unbeknownst to Tri–Star, however, prior to the execution of the distribution agreement, Columbia, which owns the rights to the Sam Spiegel, Academy–Award winning movie "Bridge on the River Kwai" (" *Bridge* "), informed Leisure Time that the title and the geographic term "River Kwai" had attained secondary meaning, and was therefore entitled to trademark protection under the Lanham Act. *Id.* at 1246. Attempts to persuade Leisure Time to

rename *Return* so as to omit the words "River Kwai" from its title were unsuccessful. *Id.* As a result of its potential trademark liability, Tri–Star declined to release *Return,* and terminated the distribution agreement on the grounds that Leisure Time breached its warranty to deliver the movie free of claims against it. *Id.*

These events led to two related lawsuits. In the first, Tri–Star filed a declaratory judgment action, *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 88 Civ. 9127(DNE), against Leisure Time based on Leisure Time's alleged breach of its warranty to deliver the movie free of claims against it. In the 1990 Opinion, this Court determined that Leisure Time had violated an express warranty in the distribution agreement. That warranty provided that "Return" would be provided for distribution free from "claims, liens, encumbrances or rights of any nature ... which can or will interfere with" Tri–Star's distribution of the film. *Id.* at 1247–50. As a result, this Court granted summary judgment in favor of Tri–Star, finding that, in light of the asserted trademark rights, Tri–Star was entitled unilaterally to terminate the distribution agreement. *Id.* at 1254. As a result, that litigation is now concluded.

In the second lawsuit, *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 88 Civ. 9129(DNE)—with which the instant Opinion and Order is concerned—Leisure Time alleges that Tri–Star, Columbia, Academy Pictures, A.G. ("Academy"), Horizon Pictures, G.B. ("Horizon") and the Spiegel Estate have, *inter alia,* "willfully and maliciously conspired together for the purpose of preventing Leisure Time from making or performing contracts for the production and distribution of [*Return*]...." (Third–Party Complaint, *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 88 Civ.1929, ¶ 46 (Jan. 12, 1989).) Leisure Time further alleges that it is "still ... ready, able and willing to carry out its [distribution] [a]greement with Tri–Star," *id.* ¶ 50, but that "Tri–Star's refusal to distribute [*Return*] unless the geographical phrase "River Kwai" is eliminated from the title, is due" to Columbia, Academy, Horizon, and the Spiegel Estate's "wrongfully claiming exclusive rights to the geographical phrase "River Kwai...." " *Id.* ¶ 49.

As a result of these alleged wrongful acts, Leisure Time makes four claims for relief against Tri–Star, Columbia, Academy, Horizon, and the Spiegel Estate. First, to remedy the illegal restraint of trade in violation of Section 340 of the New York General Business Law, Leisure Time seeks a permanent injunction against such restraint, damages to be determined after an accounting (but "believed by Leisure Time to be not less that $50,000,000"), and attorneys' fees. *Id.* ¶¶ 53–55. Second, Leisure Time contends that these parties' actions "constitute malicious interference with [Leisure Time's] contractual relationships and business," and requests damages to be determined after an accounting, but alleged to be "in excess of $50,000,000." *Id.* ¶ 56. Third, Leisure Time asserts that these parties' conduct "constitute common law unfair competition," and that Leisure Time has sustained damages to "in excess of $50,-000,000." *Id.* ¶ 57. Fourth, Leisure Time alleges that the actions of Tri–Star, Columbia, Academy, Horizon, and the Spiegel Estate damaged Leisure Time's business reputation and constitute unfair competition in violation of Section 368–d of the New York General Business Law. *Id.* ¶ 58.

This Court is presently concerned with Leisure Time's motion to compel discovery pursuant to Federal Rule of Civil Procedure 37(a). On November 16, 1995, Leisure Time issued ten document requests to Columbia seeking the production of documents relating to the claims asserted by Columbia in its amended third-party answer. (Memorandum of Law in Support of Motion to Compel of Defendants Kurt Unger and Leisure Time Productions, B.V., *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 88 Civ. 9129 ("Motion to Compel") at 1 (Jan. 18, 1996).) On January 22, 1995, Leisure Time served a "notice of continued deposition of Ronald Jacobi" ("Jacobi"), Columbia's Senior Vice president and General Counsel. *Id.*

On January 2 and 3, 1996, counsel for Leisure Time met and conferred telephonically with counsel for Columbia to discuss these discovery matters. At that time, Lei-

sure Time contends that counsel for Columbia stated that it would not respond fully to Leisure Time's first, second, third, ninth or tenth document requests. *Id.* at 2–3. In addition, counsel for Columbia allegedly "refused to produce Ronald Jacobi for deposition in this matter because ... there is no subject matter area remaining upon which to question him." *Id.* at 3. In its motion, Leisure Time seeks an Order compelling Columbia to "produce documents responsive to certain discovery requests propounded upon Columbia by Leisure Time" and to "produce Ronald Jacobi for deposition in connection with this matter." (Notice of Motion, *Tri–Star v. Leisure Time Prod., B.V.,* 88 Civ. 9129 at 2 (Jan. 18, 1996).) In addition, Leisure Time seeks "appropriate sanctions" against Columbia, "together with such other and further relief as this Court deems just and proper." *Id.*

## DISCUSSION

This Court will consider Leisure Time's motion (1) to compel the production of documents, (2) to produce Jacobi for a deposition, and (3) for sanctions against Columbia, individually.

### I.  Motion to Compel the Production of Documents

On November 16, 1995, Leisure Time submitted ten document requests to Columbia. Leisure Time maintains that counsel for Columbia has stated that it will not adequately respond to the following five document requests:

1.  Identify and produce all documents relating or referring to communications between and among:  Columbia Pictures Industries, Inc.;  Columbia Pictures Entertainment, Inc.;  Sony Pictures Entertainment, Inc.;  Sony Corporation, Inc.;  and Sony Corporation of Japan concerning the motion picture *Return from the River Kwai* ("Return").

2.  Identify and produce all documents relating or referring to communications between and among:  Columbia Pictures Industries, Inc.;  Columbia Pictures Entertainment, Inc.;  Sony Pictures Entertainment, Inc.;  Sony Corporation, Inc.;

and Sony Corporation of Japan concerning the motion picture *Bridge on the River Kwai* ("Bridge").

3.  Identify and produce all documents relating or referring to communications between or among Academy, Columbia, and plaintiff Tri–Star Pictures, Inc. ("Tri–Star") and Academy Pictures, A.G., David Bottoms and Raya S. Dreben (collectively "Academy") (including but not limited to communications with, between counsel for Academy and counsel for Columbia and Tri–Star) concerning "Return" since October 1989, including records of telephone communications.

9.  Identify and produce all documents concerning, supporting, or relating to Columbia's contention that "Return" subjects Columbia to grave risk of irreparable harm to the value of its mark.

10.  Identify and produce all documents relating or referring to the acquisition by Columbia Picture International of any rights with respect to "Return."

(Motion to Compel at 2); (Notice of Motion at Exh. 1, at 2–4.)

With respect to request number one, Leisure Time asserts that Columbia's intention to produce only those documents which Columbia deems relevant to this action contravenes the broad discovery permitted under the Federal Rules of Civil Procedure. (Motion to Compel at 4–5.) Leisure Time also claims that Columbia has informed it that Columbia will produce no documents responsive to request number two because it has produced those documents in response to similar requests in 1989 and 1991. *Id.* at 5. Leisure Time contends that Columbia's refusal is improper because the instant document request pertains to newly added Sony third-party defendants, and is facially broader than earlier requests because it encompasses more time. *Id.* at 5–6. Leisure Time further contends that the "joint defense privilege" which Columbia raised with respect to the third discovery request is flawed, and therefore provides no grounds for withholding documents.

Leisure Time claims that Columbia will not comply with the ninth document request be-

cause it calls for a "legal conclusion." *Id.* at 8. Leisure Time, however, contends that its ninth request merely pertains to Columbia's prospective damages, and therefore is within the scope of Rule 26. *Id.* Finally, Leisure Time asserts that Columbia must produce documents responsive to its tenth document request even though Columbia Pictures International ("CPI") is not a party to this action because Columbia previously produced CPI documents, and because the tenth request also seeks documents from entities which are parties to this litigation. *Id.* at 9.

In opposition to Leisure Time's motion to compel, Columbia argues that the motion should be denied because of Leisure Time's failure to confer with Columbia in good faith to resolve the issues raised in its discovery motion in violation of Rule 37(a) and Local Rule 3(f). (Memorandum in Opposition to Motion to Compel of Kurt Unger and Leisure Time Productions, B.V., *Tri–Star v. Leisure Time Prod., B.V.*, 88 Civ. 9129 ("Opp.Memo") at 10 (Feb. 19, 1997).) Columbia further points out that, because Leisure Time filed its motion to compel ten days before Columbia's response to the document requests was due, Leisure Time cannot credibly state that it attempted in good faith to resolve the discovery dispute before resorting to judicial intervention. *Id.* at 10–14. Moreover, Columbia contends that, even if this Court finds that Leisure Time did attempt in good faith to resolve the instant dispute, this Court should not compel Columbia to produce additional documents. *Id.* at 14. Columbia maintains that Leisure Time's first, ninth and tenth document requests have been mooted by Columbia's responses to those requests. Columbia also points out that had Leisure Time awaited Columbia's response, there would have been no need for a motion to compel concerning these three requests. *Id.* at 15.

Columbia further contends that Leisure Time's second and third requests are "overbroad, burdensome and seek patently irrelevant documents." *Id.* at 16. For example, Columbia asserts that request number two "would require the production of communications concerning the original production of 'Bridge' ... which date back approximately 40 years," and that such information has no relevance to the instant litigation. *Id.* at 17. Columbia also maintains that Leisure Time's argument seeking to compel compliance with its third requests "misconstrues both the nature and scope of the joint defense privilege and the facts in this case." *Id.* at 19.

This Court finds that Leisure Time's noncompliance with not just one, or even two, but three rules governing discovery disputes, leaves this Court no alternative but to deny its motion to compel document production. In order to compel a party to disclose information which was requested under the Federal Rules of Civil Procedure, a party may bring a motion to compel discovery pursuant to Rule 37(a). Rule 37(a)(2)(A), however, in relevant part provides:

> If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. *The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.*

Fed.R.Civ.P. 37(a)(2)(A) (emphasis added). Similarly, Civil Rule 3(f) of the United States District Courts for the Southern and Eastern Districts of New York Joint Rules for General, Civil, Criminal, Admiralty and Magistrate Judge Proceedings (the "Local Rules") provides:

> No motion [pursuant to, *inter alia*, Rules 26 through 37 of the Federal Rules of Civil Procedure] shall be heard unless counsel for the moving party files with the court at or prior to the argument an affidavit certifying that said counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without intervention of the court and has been unable to reach such an agreement. If part of the issues raised by motion have been resolved by agreement, the affidavit shall specify the issues so resolved and the issues remaining unresolved.

(Local Rule 3(f).) Finally, Rule 7(b) of the Honorable David N. Edelstein, Individual

Rules, Procedures and Forms (2d ed. 1992) ("Individual Rules") provides:

> The court will not entertain any discovery motion until opposing counsel have first attempted to resolve the dispute through direct communication by telephone or by a face-to-face conference.... Any discovery application or motion must be accompanied by an affidavit, pursuant to Local Rule 3(f), stating the efforts made to resolve the dispute out of court.

(Individual Rule 7(b).)

■ Rule 37(a)(2)(A), Local Rule 3(f), and Individual Rule 7(b) each "embod[y] a policy of encouraging voluntary resolution of pretrial disputes, in the interest of judicial and client economy and efficient processing of cases." *Matsushita Elec. Corp. of America v. 212 Copiers Corp.*, No. 93 Civ. 3243, 1996 WL 87245, at *1 (S.D.N.Y. Feb.29, 1996). To that end, these three rules require the parties

> to meet, in person or by telephone, and [to] make a genuine effort to resolve the dispute by determining, without regard to technical interpretation of the language of a request, what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Deckon v. Chidebere*, No. 93 Civ. 7845, 1994 WL 494885, at *5 (S.D.N.Y. Sept.9, 1994); *see also Fashion Boutique of Short Hills, Inc. v. Fendi, USA, Inc.*, No. 91 Civ. 4544, 1994 WL 118893, at *3 (S.D.N.Y. April 5, 1994).

Moreover, Individual Rule 7(b) makes explicit this Court's fervent expectation that parties appearing before it will endeavor in good faith to resolve their discovery disputes without resorting to this Court as a referee. Indeed, this Court, perhaps more strictly than most, demands that litigants adhere to the meet-and-confer requirement, and will not condone a violation simply because the potential for compromise appears bleak. *Cf. In re NASDAQ Market–Makers Antitrust Litig.*, No. 94 Civ. 3996, 1996 WL 187409, at *2–*3 (S.D.N.Y. April 18, 1996) (where, *inter alia,* the goal of encouraging compromise was unlikely to be achieved, Rule 37(a)(2) and Local Rule 3(f) were not enforced).

■ In the case at bar, this Court finds that the instant motion to compel is improper because the parties have not established that they have adequately conferred in an attempt to resolve their disputes with respect to Leisure Time's document requests. In support of its motion, Leisure Time submits two affidavits of its counsel, James J. Jennings ("Jennings"). In the first affidavit, Jennings conclusorily states that he conferred with Columbia's attorneys "in a good faith effort to resolve" their outstanding discovery disputes. (Affidavit of James J. Jennings, *Tri–Star Pictures, Inc. v. Leisure Time Prod., Inc.*, 88 Civ. 9129 ("Jennings Aff. I") ¶ 4 (Jan. 18, 1996).) Nowhere in that affidavit does Jennings detail those efforts, or explain why they proved fruitless. *See generally id.* In his second affidavit, Jennings attaches "copies of four letters from Columbia's counsel further evidencing the meet and confer process the parties engaged in ... to resolve their then pending discovery disputes prior to the filing of Leisure Time's motion to compel," and states that he conferred on January 2 and 3, 1996, with Columbia's counsel "as a follow-up to prior discussions." (Affidavit of James J. Jennings, *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.*, 88 Civ. 9129 ("Jennings Aff. II") ¶¶ 4, 6 (Feb. 29, 1996).) However, Jennings' second affidavit does not inform this Court of the substance of any prior conferences, such as the positions taken by each side in attempting to resolve their disputes, the extent to which the parties compromised these positions, and why the parties' negotiations proved unsuccessful. Instead, the affidavit merely states that, at the January 2 and 3, 1996, conferences, Jennings informed Columbia's counsel that Leisure Time would "seek to move to compel with respect to those document requests as to which Columbia's counsel had stated that Columbia either refused to produce or to look for responsive documents." *Id.* ¶ 6. This Court finds that Jennings' affidavit simply does not comport with the level of adherence to Rule 37(a)(2)(A), Local Rule 3(f) and Individual Rule 7(b) which this Court demands. Jennings' affidavit is long on

statements relating to his notifying Columbia of Leisure Time's impending motion to compel, but short on information by which this Court can ascertain whether the Leisure Time attempted, in good faith, to resolve this dispute without involving this Court.

Moreover, as Columbia points out, the fact which most damages Leisure Time's contention that it conferred with Columbia in good faith is Leisure Time's failure to wait for Columbia to complete its document production before bringing the instant motion to compel. Leisure Time filed the instant motion on January 19, 1996, while Columbia's response to Leisure Time's document requests was not due until January 19, 1996. Rather than see what Columbia actually produced, and measure Columbia's compliance with the document requests accordingly, Leisure Time relied upon Columbia's preliminary objections to the document requests as definitive statements of Columbia's refusal to comply with those requests. Indeed, the Jennings Affidavit states that he informed Columbia as early as January 2 or 3, 1996— over two weeks before Columbia's production was due—that Leisure Time intended file a motion to compel because of Columbia's objections to Leisure Time's requests. (Jennings Aff. ¶ 6.) Disagreement, however, is an obvious precursor to negotiated compromise, and thus, is a necessary component of the meet-and-confer prerequisite to bringing a motion to compel. Leisure Time, however, apparently did not attempt to negotiate a compromise with Columbia, preferring instead prematurely to involve this Court in the parties' discovery disputes. Because this Court finds that Leisure Time's motion to compel Columbia's production of documents violates the meet-and-confer requirements of the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Rules, this Court finds that Leisure Time's motion should be denied.

## II. Motion to Compel Another Jacobi Deposition

Jacobi currently holds the title of Senior Vice President and General Counsel for Columbia, and has acted as Columbia's General Counsel since before the instant litigation was commenced. (Affidavit of Ira S. Sacks, *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 88 Civ. 9129, ("Sacks Aff.") at Exh. A, at 31 (Feb. 18, 1997)); (Motion to Compel at 10.) Jacobi was deposed on April 14, 1989, "in a session that lasted less than [four] hours." (Motion to Compel at 10.) The parties dispute whether Jacobi's deposition was concluded at the end of the April 14, 1989, session. *Id.;* (Opp. Memo at 26.) On January 22, 1995, Leisure Time served "notice of continued deposition" of Jacobi, and maintains that Columbia has refused to produce him because, in Columbia's opinion there is no subject matter area remaining upon which to question Jacobi. (Motion to Compel at 10.)

In support of its motion to compel Jacobi's deposition, Leisure Time argues that "[c]ontrary to Columbia's assertion, there are many relevant matters upon which counsel for Leisure Time needs to question Mr. Jacobi." *Id.* Leisure Time contends that, "[i]f nothing else, [it] is entitled to examine Mr. Jacobi about claims and allegations only recently asserted by Columbia against Leisure Time by way of Columbia's Amended Third–Party Answer of October 31, 1995." *Id.* Because of Jacobi's role as Columbia's General Counsel, Leisure Time maintains that he "presumably has at least some knowledge of the facts surrounding those claims and allegations, and he undoubedtly only recently authorized the assertion of these claims [in Columbia's Amended Third–Party Answer]." *Id.* at 10–11. In addition, Leisure Time asserts that, because the focus of Jacobi's first deposition was the now-adjudicated companion case regarding the parties' contract claims, Columbia should be compelled to produce Jacobi for a deposition in the instant case. *Id.* at 11. Finally, "[b]ecause the documents sought by Leisure Time from Columbia in this motion will likely have an impact on the Jacobi deposition, Leisure Time requests that th[is] Court order Columbia to produce Mr. Jacobi for deposition no sooner than 10 days and no later than 20 days after the completion of Columbia's production of documents . . . ." *Id.*

In opposition to Leisure Time's motion to compel Jacobi's deposition, Columbia makes

two arguments. First, Columbia asserts that Leisure Time "points to no new allegations or claims in this action which necessitate another deposition," and fails to explain why it did not depose Jacobi in greater detail at his first deposition. Id. Moreover, Columbia argues that Leisure Time does not need to depose Jacobi about claims raised in Columbia's Amended Third–Party Answer because "these allegedly new claims are the same claims set forth in the Answer and Counterclaims of Academy, in the companion action, 88 Civ. 9127, which Academy filed . . . some six weeks before Mr. Jacobi's first deposition. . . ." Id. at 24–25. Columbia further asserts that these claims were raised by Tri–Star in its original interpleader Complaint four months before Jacobi's first deposition. Id. at 25. Columbia also contends that Leisure Time's claimed need to depose Jacobi about trademark issues is "disingenuous" because he was questioned about those issues at his first deposition and, in any event, he is not an expert in trademark law. Finally, Columbia maintains that "an attempt to depose a party's attorney calls for special scrutiny" to assure that the attorney-client privilege is not violated. Id. at 27.

Second, Columbia asserts that Jacobi's deposition is not sought for a legitimate discovery purpose. Instead, Columbia contends that Leisure Time maintains a "personal dislike for Mr. Jacobi" because he was the attorney who recommended the commencement of this litigation's companion case, and seeks a new deposition in order to harass him. (Opp. Memo at 23.) Columbia maintains that Leisure Time's request to depose Jacobi a second time is merely one component of Leisure Time's "campaign of harassment through discovery [which] is being conducted in parallel with Leisure Time's continued misrepresentations to third parties concerning Sony's alleged involvement in this action." Id. at 28. According to Columbia, Leisure Time already has taken fifteen depositions in this case, and has noticed six more. Id. Moreover, Columbia contends that "the limited nature of the information uncovered at many" of these depositions evidences their claim that they were intended to harass and burden Columbia. Id. Columbia further argues that Lei-

sure Time's conduct since it filed the instant motion to compel is additional proof of Leisure Time's harassment campaign and its abuse of discovery. Id. at 28–30. For example, Columbia contends that "on or about January 27, 1997, Columbia received yet another [Rule] 30(b)(6) deposition notice from Leisure Time, requesting that Columbia produce an individual or individuals with knowledge of *fifty-two* separate topics," many of which Columbia contends could have been the subject of prior deponents' testimony. Id. at 29 (emphasis in original).

■ The decision to grant discovery requests lies within this Court's discretion. See Stagl v. Delta Airlines, Inc., 52 F.3d 463, 474 (2d Cir.1995); Hollander v. American Cyanamid Co., 895 F.2d 80, 84 (2d Cir.1990). "Like most discovery disputes, the availability of a second deposition is left to the discretion of the trial court." Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 945 F.Supp. 693, 732 (S.D.N.Y.1996) (Edelstein, J.) (quoting Tramm v. Porter Mem., Hosp., 128 F.R.D. 666, 668 (N.D.Ind.1989)). A court's power to limit discovery must be exercised against the backdrop of the broad discovery principles embodied in Rule 26(b)(1). See AML Int'l, Ltd. v. Orion Pictures Corp., No. 89 Civ 2048, 1990 WL 364469, at *5 (S.D.N.Y. Feb.20, 1990). Under Rule 26(b)(1), "every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2001, at 41 (2d ed.1994). Relevance for discovery purposes is an extremely broad concept which "has been construed broadly to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

■ Despite such a broad interpretation, the frequency and extent of the use of permissible discovery methods shall be limited by a court's discretion, as guided by the

factors set forth in Rule 26(b)(2). Rule 26(b)(2) in relevant part provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).

Fed.R.Civ.P. 26(b)(2). This rule directs a court to "examine the burdens potentially to be borne by the various parties if the contemplated discovery is performed, and to limit such if it determines that the burdens or expenses of the discovery outweighs the benefits." *Vorhes v. McMahon,* No. 95–CV–0398E(F), 1996 WL 484309, at *1 (W.D.N.Y. Aug.2, 1996). When the discovery to be obtained is through the deposition of a senior executive, a court must remain mindful that "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Wertheim Schroder & Co., Inc. v. Avon Prod., Inc.,* No. 91 Civ. 2287, 1995 WL 6259, at *2 (S.D.N.Y. Jan.9, 1995) (quoting *Consolidated Rail Corp. v. Primary Indus. Corp.,* No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept.10, 1993) (citation omitted)).

■ In the case at bar, Jacobi has been deposed once already, and it is unclear to this Court why, if Jacobi's testimony is as important as Leisure Time claims, Leisure Time waited seven years to take additional testimony from him. Moreover, this Court is aware of the burdens which appearing for a deposition can impose upon a senior corporate executive such as Jacobi, *see id.,* as well as Columbia's allegations concerning Leisure Time's campaign of harassment through abusive discovery. Nevertheless, Rule 26(b)(1)'s broad, mandatory prescription for the discovery of all relevant evidence is clear, and this Court finds that Jacobi, as Columbia's General Counsel throughout this litigation as well as many of the events underlying it, possesses information relevant to the instant action. In addition, by adding infringement claims in its Amended Third–Party Answer, Columbia has added issues with respect to which Jacobi was not questioned at his original deposition. Also, this Court is not persuaded by Columbia's argument that, because other parties raised infringement issues prior to Jacobi's earlier deposition, Leisure Time had the opportunity to question Jacobi about those issues at his deposition. (Opp. Memo at 24–25.). As Leisure Time points out in its reply papers, simply because one party to a multi-party litigation raises an issue does not mean that other parties should be deemed to have had the opportunity for discovery of that issue as it relates to them. (Reply Memorandum of Law in Support of Motion to Compel of Defendants Kurt Unger and Leisure Time Productions, B.V., *Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 88 Civ. 9129 at 3–4 (Feb. 28, 1997).) As a result, this Court finds that Leisure Time's motion to compel Jacobi's deposition should be granted, subject to Leisure Time's good-faith adherence to the following restrictions:

1. Jacobi's deposition is to be strictly confined to new claims and issues raised in Columbia's Amended Third–Party Answer. As Leisure Time itself asserts in its motion papers, "[i]f nothing else, Leisure Time is entitled to examine Mr. Jacobi about the claims and allegations only recently asserted by Columbia against Leisure Time by way of Columbia's Amended Third–Party Answer of October 31, 1995." (Motion to Compel at 10.) This Court finds that statement to be an accurate depiction of the necessary scope of Jacobi's deposition, and finds that Leisure Time should abide by it.

2. Relatedly, because Jacobi has been deposed once, Leisure Time may not re-ques-

tion him regarding any of the topics covered in his previous testimony, except where *necessary* to elicit new testimony regarding new claims and issues raised in Columbia's Amended Third–Party Answer. *See Perry v. Kelly–Springfield Tire Co.*, 117 F.R.D. 425, 426 (N.D.Ind.1987) (there is "no logical reason why [a party] should duplicate the same material covered at the first deposition").

3. Because of Jacobi's position as Columbia's General Counsel, Leisure Time may not seek to elicit testimony from him which threatens the integrity of the attorney-client privilege.

### III. Motion for Sanctions & Costs

Finally, Leisure Time requests that this Court order Columbia to pay Leisure Time's "costs, reasonable expenses and attorney's fees incurred in connection" with its motion to compel. (Motion to Compel at 11.) Leisure Time asserts that "[b]ecause Columbia's refusal to produce documents is based upon meritless objections and because Columbia's refusal to produce Mr. Jacobi for further deposition is unreasonable in light of, if nothing else, Columbia's own recently amended pleading, Leisure Time is entitled to its costs and attorney's fees." *Id.* at 11–12.

In opposition, Columbia argues that an award of expenses and attorney's fees based on the instant motion is unjust because of Leisure Time's failure to confer with Columbia in good faith in an attempt to resolve their discovery disputes without judicial intervention. (Opp. Memo at 30.) Moreover, Columbia asserts that Leisure Time should be required to reimburse Columbia's costs of opposing the instant motion. *Id.*

■ Rule 37(a)(4)(A) provides:

*If the motion [to compel] is granted* or if the disclosure or requested discovery is provided after the motion is filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion

was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A) (emphasis added). Similarly, Rule 37(a)(4)(B) provides:

*If the motion [to compel] is denied,* the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of attorney's fees unjust.

Fed.R.Civ.P. 37(a)(4)(B) (emphasis added).

In the case at bar, this Court finds that neither party is entitled to costs incurred as a result of this motion. Leisure Time's motion to compel was denied as to its document requests, but granted (subject to restrictions) with respect to its request to depose Jacobi. Where a party brings only a partially successful motion to compel, Rules 37(a)(4)(A) and (B) direct that a court "shall" both award to, and impose upon, each party expenses and attorney's fees after permitting them each an opportunity to be heard. A court need not award costs, however, where, *inter alia*, it finds such an award "unjust." Fed. R.Civ.P. 37(a)(4)(A), (B).

In light of the additional time and expense that would be imposed upon both parties by offering them each an opportunity to be heard with respect to the imposition of costs—which is likely to work out to a "wash" because each party would both receive and pay costs—this Court finds that an award to each party of expenses and attorney's fees would not only be unjust, but also would do little to further Rule 37's purpose of minimizing the resources which courts expend in resolving discovery disputes. As a result, this Court finds that both parties' requests for expenses and attorney's fees

associated with the instant motion to compel should be denied.

### CONCLUSION

IT IS HEREBY ORDERED THAT Leisure Time's motion to compel the production of documents is DENIED.

IT IS FURTHER ORDERED THAT Leisure Time's motion to compel the deposition of Jacobi is GRANTED, subject to the following restrictions: (1) Jacobi's deposition is to be strictly confined to new claims and issues raised in Columbia's Amended Third–Party Answer; (2) Leisure Time may not re-question him regarding any of the topics covered in his previous testimony, except where *necessary* to elicit new testimony regarding new claims and issues raised in Columbia's Amended Third–Party Answer; and (3) Leisure Time may not seek to elicit testimony from him which threatens the integrity of the attorney-client privilege.

IT IS FURTHER ORDERED THAT both Leisure Time and Columbia's requests for expenses and attorney's fees are DENIED.

SO ORDERED.